**Michael Fuller, OSB No. 09357**
OlsenDaines
michael@underdoglawyer.com
Direct 503-743-7000

**Robert S. Sola, OSB No. 844541**
Robert S. Sola, P.C.
rssola@msn.com
Telephone 503-295-6880

**Kelly D. Jones, OSB No. 074217**
The Law Office of Kelly D. Jones
kellydonovanjones@gmail.com
Direct 503-847-4329

**Jeffrey B. Sand, admitted** *pro hac vice*
Weiner & Sand, LLC
js@atlantaemployeelawyer.com
Telephone: 404-205-5029

Attorneys for Plaintiff Matthew Sponer

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTAND DIVISION

| | |
|---|---|
| **MATTHEW SPONER,** | Case No. 3:17-cv-02035-HZ |
| Plaintiff, | **PLAINTIFF'S RESPONSES TO WELLS FARGO'S MOTIONS** *IN LIMINE* |
| v. | |
| **EQUIFAX INFORMATION SERVICES, LLC and WELLS FARGO BANK N.A.,** | |
| Defendants. | |

PAGE 1 – PLAINTIFF'S RESPONSES TO WELLS FARGO'S MOTIONS *IN LIMINE*

**Response to Motion 1:** First, this motion should be denied because the parties reached a stipulation of fact for trial that the jury would be provided the following information regarding Wells Fargo's net worth and income: "(1) Wells Fargo Bank N.A.'s current net worth is approximately $165 billion, and (2) Wells Fargo Bank N.A.'s net income is approximately $21.6 billion for 2018, $21 billion for 2017, and $19.9 billion for 2016." *See* Declaration of Robert S. Sola (Sola Decl.) ¶2, Exhibit 1. The purpose of this stipulation was to save the parties and the Court time and resources. Plaintiff intended to call a financial expert, Dr. Fruits, on these matters, and to offer exhibits with Wells Fargo's net worth and income. *See* Sola Decl. ¶3. Once the stipulation was made, Plaintiff agreed not to call Dr. Fruits, and did not offer the exhibits, only because they were not necessary in light of the stipulation. *Id.* Plaintiff also agreed not to depose Wells Fargo's financial expert, Mr. Santana, because he had been designated only as a rebuttal witness to Dr. Fruits whom was not going to be a witness in the trial. *Id.* Wells Fargo is now attempting to disavow the stipulation which the parties made, and which plaintiff relied on in deciding not to call Dr. Fruits or offer exhibits on Wells Fargo's net worth and income. Wells Fargo's improper tactic of making a stipulation for trial and then seeking to exclude the information it stipulated would be admitted, should be rejected.

Second, this motion must be denied because controlling precedent provides that Wells Fargo's wealth and financial condition are admissible so that the jury can assess the proper amount of punitive damages, if any. This comports with the purpose of punitive damages, which is to deter future misconduct. Contrary to Wells Fargo's argument, this is black letter law in both diversity cases applying state law or federal question cases applying federal law to punitive damages. *See Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21-22 (1991) (one of the factors relevant to assessing a punitive damage award is the "financial position" of the defendant); *Bains LLC v. ARCO Prods.*

*Co.*, 405 F.3d 764, 777 (9th Cir. 2005) ("A punitive damages award is supposed to sting so as to deter a defendant's reprehensible conduct, and juries have traditionally been permitted to consider a defendant's assets in determining an award that will carry the right degree of sting."); *White v. Ford Motor Co.*, 500 F.3d 963, 976-77 (9th Cir. 2007) (defendant's "argument that evidence of a defendant's financial condition is irrelevant to the setting of a punitive damages award is meritless"); *United States v. Big D. Enters.*, 184 F.3d 924, 932 (8th Cir. 1999) (assessment of punitive damages under the federal Fair Housing Act is governed by federal law and "evidence of a defendant's financial worth is traditionally admissible for the purpose of evaluating the amount of punitive damages that should be awarded," citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981)); Restatement (Second) of Torts § 908(2) (1979) ("In assessing punitive damages, the trier of fact can properly consider … the wealth of the defendant").

Submission of a defendant's financial condition to the jury is common in FCRA punitive damages cases. *See, e.g.*, *Miller v. Equifax Info. Servs., LLC*, No. 3:11-CV-01231-BR, 2014 WL 2123560, 2014 U.S. Dist. LEXIS 69450, at *26 (D. Or. May 20, 2014) (defendant's wealth can be considered when determining punitive damages under the FCRA that will deter future conduct, and that defendant's substantial net worth was an appropriate factor considered by the jury); *Todd v. AT&T Corp.*, No. 16-cv-03357-HSG (MEJ), 2017 WL 1398271, 2017 U.S. Dist. LEXIS 60000, at *6 (N.D. Cal. Apr. 19, 2017) ("A FCRA defendant's current net worth is relevant to evaluating whether a punitive damages award is 'sufficient to fulfill' its purpose of deterrence."); *Dixon-Rollins v. Experian Info. Sols., Inc.*, 753 F. Supp. 2d 452, 467 (E.D. Pa. 2010) (same).

Wells Fargo cites to *Kemezy v. Peters,* 79 F.3d 33, 36 (7th Cir. 1996), and incorrectly asserts that "*only the defendant* should be allowed to offer evidence of its own wealth and only for the purpose of arguing that punitive damages should be waived or lowered based on the

defendant's poverty." Dkt. 72 at 2 (emphasis in original). In *Kemezy*, the court held simply that a plaintiff who seeks punitive damages is not *required* to present evidence of the defendant's net worth, not that a plaintiff cannot do so. 79 F.3d at 34-37.

Wells Fargo also cites to Justice O'Connor's dissent in *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 492 (1993). In addition to being in the dissent, Justice O'Connor acknowledged that "[a]s a historical matter, the wealth of the perpetrator long has been thought relevant." *Id.* (O'Connor, J., dissenting). More important, the plurality opinion in *TXO* found that allowing the jury to consider evidence of the defendant's income and net worth was not in error, because it is "well-settled" that a defendant's "net worth" is a factor that is "typically considered in assessing punitive damages" *Id.* at 462 n.28.[1] Wells Fargo's cautionary warning that the jury may be prejudiced against Wells Fargo because it "is a big business *without a strong, local presence*" is simply untrue: Wells Fargo has a myriad of branches in this district and many local customers. Dkt. 72 at 3 (emphasis added).

**Response to Motion 2:** The Court should deny this motion because, as set forth above, the parties have already stipulated to Wells Fargo's income and most recent net worth figures. When parties enter into stipulations as to material facts, those facts will be deemed to have been conclusively proved, and the jury may be so instructed. *United States v. Mikaelian*, 168 F.3d 380, 389 (9th Cir. 1999). The most recent fiscal year is 2018, so that is the current net worth. The parties stipulated to income for the years 2016, 2017, and 2018 because those are the years during which plaintiff

---

[1] Wells Fargo also cites to *Zazú Designs v. L'Oreál, S.A.*, 979 F.2d 499, 508-09 (7th Cir. 1992), and *Yund v. Covington Foods, Inc.*, 193 F.R.D. 582, 589 (S.D. Ind. 2000) (relying on *Zazú*). This language in *Zazú* is dicta and has not even been followed by district courts within the Seventh Circuit. *See, e.g.*, *Donald v. Wexford Health Sources, Inc.*, 266 F. Supp. 3d 1097, 1099 (C.D. Ill. 2017) (allowing evidence of the defendant's net worth and finding that "[t]he majority of district courts, however, have found that *Zazú's* musings on punitive damages are indeed dictum.").

PAGE 4 – PLAINTIFF'S RESPONSES TO WELLS FARGO'S MOTIONS *IN LIMINE*

alleges that Wells Fargo violated the FCRA, and this snapshot of income is relevant for the jury to understand the overall financial condition of Wells Fargo.[2]

**Response to Motion 3:** Wells Fargo's request to exclude "argumentative comments" is much too vague to be granted. Plaintiff does not intend to offer evidence of dissimilar acts but may introduce evidence of *similar* FCRA lawsuits based on *similar* conduct by Wells Fargo to show notice to Wells Fargo and its pattern and practice. Such evidence is relevant and admissible. Any potential prejudice is outweighed by the probative value regarding negligence, willfulness, and reprehensibility. *See* Fed. R. Evid. (FRE) 404(b); *Sandigo v. Ocwen Loan Servicing*, LLC, No. 17-cv-02727-BLF, 2019 WL 2579341, 2019 U.S. Dist. LEXIS 105412, at *19-20 (N.D. Cal. June 24, 2019) (allowing testimony about past lawsuits and consent decrees "that are sufficiently similar to this case in order to prove that [the defendant] acted willfully, such that punitive damages are appropriate under the Fair Credit Reporting Act"); *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 953-54 (9th Cir. 2011) (district court did not err in "concluding that the testimony of [the defendant's] conduct in similar cases was relevant to show intent, absence of mistake, malice, willfulness, and reprehensibility," including for the purpose of assessing punitive damages).[3]

---

[2] *See, e.g., Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1119 (2d Cir. 1986) (upholding punitive damages award, finding relevancy in Citibank's net worth (approximately $6.3 billion) *and* its annual net income (approximately $777 million)); *Saunders v. Equifax Info. Servs., LLC*, 469 F. Supp. 2d 343, 347 (E.D. Va. 2007) (denying motion for remittitur of punitive damages in FCRA case where jury was instructed on purpose of awarding punitive damages and "the salient factors they could consider in making any award[,]" including "[d]efendant's income and net worth.").

[3] Wells Fargo's insertion of photographs of Michael Fuller and its comments about Mr. Fuller are irrelevant, and this is not the first time it has done so. *See* Declaration of Michael Fuller ¶¶1-2.

PAGE 5 – PLAINTIFF'S RESPONSES TO WELLS FARGO'S MOTIONS *IN LIMINE*

**Response to Motion 4:** The Court should deny this motion precluding evidence of whether Wells Fargo should have or failed to apologize or acknowledge its errors, or the timing of its admission of negligence. This evidence is relevant for many reasons.

First, it is relevant to plaintiff's damages. If Wells Fargo would have admitted its wrongdoing earlier, that would have reduced some of plaintiff's distress and frustration. That distress and frustration built up over time as Wells Fargo repeatedly said it would not agree that the account was the result of identity theft and that it had verified its accuracy. An apology or admission that it was wrong would have relieved some of this distress.

The information is also necessary so the jury has a complete understanding of the facts. If Wells Fargo is allowed to admit negligence but plaintiff cannot state when that admission was made, the jury may think that Wells Fargo admitted negligence a year or even two years ago, and that plaintiff is pursuing a lawsuit that he did not need to pursue. It would be misleading to the jury and prejudicial to plaintiff for Wells Fargo to come into court and say it was admitting wrongdoing without telling the jury that this admission was made only a few weeks before trial.

This evidence is also relevant because it is inconsistent with prior statements of Wells Fargo in its pleadings and the deposition testimony of its representative. If Wells Fargo is allowed to admit wrongdoing at trial, the jury should know that it has previously denied all wrongdoing or liability for any of its actions. This evidence is relevant on the issue of reprehensibility, which is a factor the jury will consider in determining punitive damages. *See* MCJI 5.5 Punitive Damages. Wells Fargo's long delay in admitting liability also raises questions as to its motives, intent, and lack of remorse—all relevant to willfulness, a major issue in the case.

Wells Fargo has fought plaintiff's claims in every phase of this litigation, consistently denying liability, moving for summary judgment, testifying that it did not violate the FCRA, and

PAGE 6 – PLAINTIFF'S RESPONSES TO WELLS FARGO'S MOTIONS *IN LIMINE*

denying any violations in response to Plaintiff's Requests for Admission. Allowing Wells Fargo to admit wrongdoing now without any reference to the timing would let Wells Fargo "game the system," taking one position when they think it is to their advantage and the opposite after summary judgment is denied and the case is about to go to a jury.

**Response to Motion 5: Unopposed**

**Response to Motion 6:** Plaintiff's claims in this case are for violation of the FCRA, 15 U.S.C. § 1681s-2(b). The FCRA places other obligations on furnishers in § 1681s-2(a) for which a consumer does not have a private right of action. *See* 15 U.S.C. § 1681s-2(c). Thus, Wells Fargo's argument that its obligations under § 1681s-2(a) are not relevant may be theoretically correct. The problem with its motion is that Wells Fargo is trying to use the provisions of § 1681s-2(a)(8) concerning direct disputes as a defense to plaintiff's claims under § 1681s-2(b). Specifically, it intends to offer its October 26, 2016 letter to plaintiff requesting documents, Exhibit 501, (which it sent in response to Mr. Charne's direct dispute letter of October 19, 2016), and discuss his alleged failure to provide all those documents.[4] This defense may be relevant to a direct dispute under § 1681s-2(a)(8), which expressly allows a furnisher to avoid doing an investigation if it reasonably determines that a dispute is frivolous or irrelevant because of "the failure of a consumer to provide sufficient information," (and sends the required notification to the consumer). But that defense does not apply to claims under § 1681s-2(b), which has no comparable provision.

In contrast, § 1681s-2(b)(1)(A) states that a furnisher "shall (A) conduct an investigation" upon receiving notice of a dispute from a consumer reporting agency. There are no exceptions to that duty to investigate. Consistent with that statutory language, a furnisher *cannot* demand further documentation from a consumer before conducting an investigation. *Boggio v. USAA Fed. Sav.*

---

[4] Plaintiff intends to withdraw Exhibit 3, the October 26, 2016 letter faxed to Mr. Charne.

PAGE 7 – PLAINTIFF'S RESPONSES TO WELLS FARGO'S MOTIONS *IN LIMINE*

*Bank*, 696 F.3d 611, 619 n.6 (6th Cir. 2012); *Fregoso v. Wells Fargo Dealer Servs., Inc.*, No. 11-cv-10089-SJO-AGRx, 2012 WL 4903291 (C.D. Cal. Oct. 16, 2012).

For these reasons, and those stated in plaintiff's Motion in Limine Two, plaintiff seeks to exclude Wells Fargo from offering evidence to support a defense to plaintiff's § 1681s-2(b) claim based on provisions of § 1681s-2(a) relating to his direct dispute. Wells Fargo's Motion in Limine to exclude all evidence related to § 1681s-2(a) is a tacit admission that plaintiff's Motion in Limine Two should be granted.

Wells Fargo cannot have it both ways. It cannot use the provisions of § 1681s-2(a) in its defense, but then argue those provisions are not relevant, or attempt to bar plaintiff from offering evidence concerning its obligations under § 1681s-2(a). If Wells Fargo can use the provisions of § 1681s-2(a), plaintiff should also be allowed to do so, and show that Wells Fargo failed to comply with those provisions concerning a direct dispute, accuracy, updating information, and identity theft. *See* 15 U.S.C. § 1681s-2(a)(1), (2), (6), (8).

**Response to Motion 7:** This motion is moot. Plaintiff is not seeking economic damages associated with either lost opportunity to obtain credit or damage to his reputation.

**Response to Motion 8: Unopposed**

**Response to Motion 9:** This motion should be denied. Plaintiff's experts do not offer legal opinions. They provide testimony that will assist the trier of fact in understanding the reasonableness of Wells Fargo's conduct. Wells Fargo has filed objections to plaintiff's experts that are identical to this Motion. Plaintiff responds in further detail to those objections in his Response to Wells Fargo's Objections to Plaintiff's Exhibits and Witnesses.

**Response to Motion 10:** Plaintiff's experts do not, nor will they, testify about plaintiff's emotional distress. However, they should be permitted to testify regarding the type of damages that are

common to victims of credit reporting errors. Wells Fargo has filed objections to plaintiff's experts that are identical to this Motion. Plaintiff responds in further detail to those objections in his Response to Wells Fargo's Objections to Plaintiff's Exhibits and Witnesses.

**Response to Motion 11:** As stated, this motion is too vague for the Court to meaningfully consider. Plaintiff respectfully submits that a ruling on this motion should await trial testimony, at which time the Court can evaluate whether specific testimony being offered is on a topic that was in the expert's report. With respect to the example that Wells Fargo offers—asserting that plaintiff's experts do not offer an opinion as to what a reasonable investigation under the FCRA would entail—it is simply wrong. Both Mr. Hendricks and Mr. Tarter discuss the inadequacy of Wells Fargo's investigations and, conversely, what a reasonable investigation would entail.

**Response to Motion 12:** The Court should deny this motion as overbroad. It does not specify, other than two examples, the types of comments that should be excluded. It even requests exclusion of any questions or arguments based upon an entire book.

**Response to Motion 13: Unopposed**

**Response to Motion 14:** The Court should deny this motion to exclude the TransUnion fraud block notice, Exhibit 60, based on it not being produced until March 18, 2019, after the discovery deadline had passed. Wells Fargo omits the crucial fact that plaintiff served the subpoena to TransUnion on January 8, 2019, well before the discovery deadline. Sola Decl. ¶4. That is the relevant date for determining if the information obtained through the subpoena should be admitted. *InternMatch, Inc. v. Nxtbigthing*, LLC, No. 14-cv-05438-JST, 2016 U.S. Dist. LEXIS 41555, at *4-6 (N.D. Cal. Mar. 28, 2016) (documents pruduced under Rule 45 are timely if subpoena was *served* before discovery deadline).

TransUnion produced some of the subpoenaed documents but no certification establishing they were business records. TransUnion produced a certification on February 19, 2019. *Id*. Plaintiff produced those documents and the certification to Wells Fargo on February 26, 2019. *Id*. Because the TransUnion documents did not include any fraud block notices, plaintiff made a follow up request that TransUnion produce any fraud block notices. *Id*. On March 18, 2019, TransUnion produced the fraud block notice and the record of mailing it, which comprise Exhibit 60, and a new certification. *Id*. The next day, plaintiff produced those two additional documents and the new certification to Wells Fargo. *Id*.

Wells Fargo has suffered no prejudice from the timing of the production of the documents. It could have deposed TransUnion, as it was aware of the subpoena within the discovery deadline. But it chose not to take a deposition of TransUnion, or any third parties.

Wells Fargo also argues that the documents should not be admitted because there is no testimony from TransUnion to explain them. The TransUnion certification qualifies the documents as business records pursuant to FRE 902(11) and 803(6). The documents are not hearsay and can be offered to prove the truth of the matters asserted within them. The second page of Exhibit 60 (TU 726) is the actual notice letter from TransUnion to Wells Fargo. It needs no explanation as it identifies the consumer, the creditor, and the account number, and states that TransUnion is blocking the information as fraudulent. Plaintiff offers this exhibit to show that Wells Fargo was informed of the information in the letter. The first page of plaintiff's Exhibit 60 (TU 725) states:

> Mailed To Credit & Grantor At:    WELLS FARGO DLRSVC/WACHO
> PO BOX 1697
> WINTERVILLE, NC 28590

Because the document is not hearsay, plaintiff can offer it to prove the truth of that statement: that the notice was mailed to Wells Fargo at that address.

PAGE 10 – PLAINTIFF'S RESPONSES TO WELLS FARGO'S MOTIONS *IN LIMINE*

**Response to Motion 15:** It is unclear if Wells Fargo is seeking to exclude this deposition testimony or simply preclude plaintiff from using it to "bind defendant." Plaintiff can use the deposition testimony of these witnesses because they are more than 100 miles from the place of trial. Fed. R. Civ. P. 32(a)(4)(B). The deposition testimony is admissible whether being used to bind defendant or to inform the jury of some of the most important facts of the case: the actions that were taken by Wells Fargo to investigate plaintiff's disputes.

But Wells Fargo is also incorrect in claiming that these employees are not officers, directors, or managing agents of defendant. At least two courts have held that persons who handle disputes of consumer credit information are managing agents of the company that employs them. *Odsather v. Fay Servicing, LLC*, No. C18-0289-JCC, 2019 U.S. Dist. LEXIS 4916, at *2-4 (W.D. Wash. Jan. 10, 2019) (furnisher's ACDV operators are managing agents); *Calderon v. Experian Info. Solutions, Inc.*, 290 F.R.D. 508, 516 (D. Idaho 2013) (Experian's employees who investigate consumer disputes are managing agents). Because these employees are managing agents, plaintiff can use their deposition testimony for any purpose. Fed. R. Civ. P. 32(a)(3).

Wells Fargo's other argument that these employees should not be able to testify that their conduct was consistent with defendant's policies and procedures also has no merit. These employees are trained in Wells Fargo's policies and procedures and know what those procedures are. The testimony is simply offered to show that their conduct was consistent with Wells Fargo's policies and procedures, as they said it was.

Dated this 5th day of August, 2019.

/s/ Robert S. Sola
**Robert S. Sola, OSB No. 844541**
Robert S. Sola, P.C.
rssola@msn.com
Of Attorneys for Matthew Sponer

PAGE 11 – PLAINTIFF'S RESPONSES TO WELLS FARGO'S MOTIONS *IN LIMINE*

## CERTIFICATE OF SERVICE

I certify that I caused this document to be served on the following via the Court's ECF system and via email to:

    Timothy J. Fransen
    tfransen@cosgravelaw.com
    Robert E. Sabido
    rsabido@cosgravelaw.com
    Daniel Peterson
    dpeterson@cosgravelaw.com

    Attorneys for Defendant Wells Fargo Bank, N.A.

Dated: August 5, 2019

    /s/ Robert S. Sola
    **Robert S. Sola, OSB No. 844541**
    Robert S. Sola, P.C.
    1500 SW First Avenue, Suite 800
    Portland, Oregon 97201
    rssola@msn.com
    Telephone 503-295-6880

    **Kelly D. Jones, OSB No. 074217**
    The Law Office of Kelly D. Jones
    kellydonovanjones@gmail.com
    Telephone 503-847-4329

    Of Attorneys for Plaintiff Matthew Sponer