**Michael Fuller, OSB No. 09357**
OlsenDaines
michael@underdoglawyer.com
Direct 503-222-2000

**Robert S. Sola, OSB No. 844541**
Robert S. Sola, P.C.
rssola@msn.com
Telephone 503-295-6880

**Kelly D. Jones, OSB No. 074217**
The Law Office of Kelly D. Jones
kellydonovanjones@gmail.com
Direct 503-847-4329

**Jeffrey B. Sand, admitted *pro hac vice***
Weiner & Sand LLC
js@atlantaemployeelawyer.com
Telephone: 404-205-5029

Attorneys for Plaintiff Matthew Sponer

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MATTHEW SPONER,** | Case No. 3:17-cv-02035-HZ |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO WELLS FARGO'S MOTION TO SUPPLEMENT EXHIBITS** |
| v. | |
| **EQUIFAX INFORMATION SERVICES, LLC and WELLS FARGO BANK N.A.,** | **SUPPLEMENTAL** |
| Defendants. | |

## INTRODUCTION

As directed by the Court, plaintiff deposed Wells Fargo's corporate representative about its undisclosed ACDV fraud dispute procedures so that the Court could rule on the admissibility of the procedures. The following deposition excerpts confirm that Wells Fargo's untimely disclosed procedures should be excluded under Rule 37, because Wells Fargo offers no substantial justification for its nondisclosure, acknowledges that its procedures should have been easily identifiable in a routine discovery search, and could not even articulate any relevant basis for wanting to introduce the procedures. On the other hand, allowing Wells Fargo to introduce the procedures in violation of the Court's trial management order and Rules 26 and 34 would cause harm to plaintiff and result in jury confusion.

## FACTS

Due to "an apparent oversight" Wells Fargo withheld relevant procedures throughout the course of discovery in this case. (Dkt. 96 at 3.) These previously unproduced documents include "Procedures for Processing an Indirect Fraud Dispute ACDVs," "ACDVs – Accounts Easily Identified As Fraud Accounts," and "ACDVs – Accounts Not Easily Identified As Fraud." (*Id.*)

At the pretrial conference on August 19, 2019, Wells Fargo admitted that "[t]here is no question" that it should have produced the documents it previously withheld from plaintiff.

```
10        THE COURT:  All right.  Anything else?
11        MR. FRANSEN:  Well, you know, Your Honor, we
12   acknowledge these should have been produced before.  There is no
13   question of that.  They're relevant.  But they don't harm the
14   plaintiff.
```

Wells Fargo admitted that it was mistaken in its sworn deposition testimony when it confirmed that it had in fact produced all responsive policies to plaintiff.

```
15          And I hope it's made clear in our briefing, but Bets

16   Berg, even though she was mistaken in her deposition about all

17   policies having been provided, which is clear because she said

18   that and it's here, she testified about the content of these

19   policies.  So she did -- she did know about what they would say,
```

Wells Fargo admitted that it "didn't know" why the newly produced policies were not gathered in the original set provided to plaintiff in discovery.

```
13          I don't know sitting here today why they didn't gather

14   this, but they didn't gather these in their original set.  The

15   set that we produced and that the witness testified about under

16   deposition, Bets Berg, didn't notice that they were missing

17   either.
```

Wells Fargo claimed that it withheld the newly produced policies by "mistake" and not intentionally, but could not provide any details to the Court.

```
18          So plaintiff's counsel says we withheld them.  Well,

19   we didn't withhold anything intentionally.  Certainly there's a

20   mistake -- obviously a mistake had to have been made for these

21   to not be --
```

When asked by the Court to explain why documents were withheld from production, Wells Fargo responded, "I don't know that I can."

```
1           THE COURT:  So explain that to me.

2           MR. FRANSEN:  Well, I don't know how much -- I don't

3    know that I can.
```

During the deposition of its corporate representative on August 22, 2019 Wells Fargo was unable to provide any substantive answers about its previously undisclosed documents.

> 13      **Q. (By Mr. Sola) All right. Now, these are**
> 14  **documents that were just recently produced. Are you**
> 15  **aware of that?**
> 16      A. Yes, I'm aware.
> 17      **Q. Why were these documents just recently**
> 18  **produced?**
> 19      MR. FRANSEN: Well, to the extent the
> 20  question asks the witness to disclose information she
> 21  learned in communication with counsel, I'll instruct
> 22  her not to answer, but otherwise you can answer if
> 23  you know.
> 24      THE WITNESS: I don't know why they were
> 25  just now entered. I was not involved in the --

During its August 22, 2019 deposition Wells Fargo admitted that its newly produced documents were maintained electronically and easily accessible to its legal department during discovery through its searchable intranet site.

> 4      **Q. Okay. Well, I guess what I'm trying to**
> 5  **know, what -- how are the Credit Bureau Operations**
> 6  **policies maintained? You know, in other words, are**
> 7  **they all in one electronic document, are they in**
> 8  **separate electronic documents with some kind of**
> 9  **index, or how are they maintained?**
> 10      A. So there -- there isn't -- there's an
> 11  appendix, but each policy and procedure are broken
> 12  out by the topic of that policy and procedure.
> 13      **Q. Okay. And then is there a folder, though,**
> 14  **you would go to, or a site, and then when you went to**
> 15  **that folder or site, that would give you access to**
> 16  **all the Credit Bureau Operations policies?**
> 17      A. We have an intranet site that lists all of
> 18  the Credit Bureau Operations policies.

During its deposition Wells Fargo refused to provide Court and counsel any detail about what it did during discovery to comply with its obligations to produce responsive documents. Wells Fargo also refused to explain how its newly produced documents were allegedly found.

> 6    **Q. (By Mr. Sola) How were these documents that**
> 7    **are at Wells Fargo 508 found?**
> 8        MR. FRANSEN:  Same objection, same
> 9    instruction.
> 10        THE WITNESS:  ==I don't know.==

> 3        **Q. (By Mr. Sola) All right.  And so if you were**
> 4    **looking to find all policies and procedures related**
> 5    **to investigations of ACDVs you could go to that site,**
> 6    **right?**
> 7        A.  ==Yes, that's correct.==
> 8        **Q.  And you would find both the policies that**
> 9    **begin at page 370 and the policies that begin at 508,**
> 10    **right?**
> 11        A.  That is correct.
> 12        **Q.  And do you know what Wells Fargo did to look**
> 13    **for policies and procedures related to Credit Bureau**
> 14    **Operations in response to plaintiff's request for**
> 15    **production?**
> 16        A.  ==I do not.==
> 17        **Q.  Well, our understanding is Wells Fargo did**
> 18    **not look for these policies and procedures beginning**
> 19    **at 508 until recently.  Is that true?**
> 20        MR. FRANSEN:  Object to the form of the
> 21    question and restate my instruction to not answer if
> 22    it involves disclosing privileged information.  But
> 23    you can answer if you can.
> 24        THE WITNESS:  ==I -- I don't know, so I can't.==

During its deposition Wells Fargo's corporate representative admitted that she didn't know whether or not she had ever even seen the newly produced procedures before getting involved in this lawsuit.

> 8    Q.  This title is "ACDVs accounts easily
> 9    identified as fraud accounts," and then under Summary
> 10    it says, "When a fraud dispute is received, the
> 11    account may be easily identified as fraud."  You see
> 12    that?
> 13    A.  I -- I do.
> 14    Q.  Yeah, actually I want to ask a question
> 15    about these in general.  These procedures for
> 16    processing an indirect fraud dispute ACDV, were you
> 17    aware of these before you got involved in this
> 18    lawsuit?
> 19    A.  Can you rephrase the question?
> 20    Q.  Had you ever seen these procedures before
> 21    you got involved in this lawsuit?
> 22    A.  What procedures are you referencing?
> 23    Q.  The procedures that begin on 508 and go
> 24    through 513.
> 25    A.  I -- I don't know.

Wells Fargo was similarly unaware if its prior head of Credit Bureau Operations had ever seen the newly disclosed procedures.

> 1    Q.  Now, you read Bets Burg's deposition, right?
> 2    A.  Yes.
> 3    Q.  And do you recall when I asked her if there
> 4    were any more procedures beyond the ones that had
> 5    been produced, she said, Well, not that would be
> 6    relevant, not dealing with identity theft.  Do you
> 7    recall that?
> 8    MR. FRANSEN:  Object to the form.  You can
> 9    answer.  Go ahead and answer.
> 10    THE WITNESS:  Yes, I recall it.
> 11    Q.  (By Mr. Sola) All right.  So she wasn't
> 12    aware of these procedures when she testified in her
> 13    deposition, right?
> 14    MR. FRANSEN:  Object to the form of the
> 15    question.  Answer if you know.
> 16    THE WITNESS:  Correct.

Wells Fargo also stated that it did not know whether or not the previously undisclosed procedures were even relevant to this case.

| | |
|---|---|
| 1 | Q.  "ACDVs accounts not easily identified as |
| 2 | fraud accounts," so this is a set of procedures for |
| 3 | accounts that are not easily identified as fraud |
| 4 | accounts, right? |
| 5 | A.  That is correct. |
| 6 | Q.  And do you know if Mr. Sponer's disputes |
| 7 | would fall under this category, as not easily |
| 8 | identified as fraud accounts? |
| 9 | MR. FRANSEN:  Object to the form. |
| 10 | THE WITNESS:  I do not know. |
| 11 | Q.  (By Mr. Sola) All right.  So fair to say you |
| 12 | don't know if any of these procedures on pages 510 to |
| 13 | 513 are relevant to plaintiff's disputes? |
| 14 | MR. FRANSEN:  Object to the form of the |
| 15 | question. |
| 16 | THE WITNESS:  I was just looking at 513 to |
| 17 | see the end of the procedures.  I don't know. |
| 18 | Q.  (By Mr. Sola) All right.  You don't know if |
| 19 | these are relevant to these disputes, correct? |
| 20 | MR. FRANSEN:  Object to the form of the |
| 21 | question; asked and answered. |
| 22 | THE WITNESS:  Correct. |

The law under these circumstances is clear. In accordance with Rule 37, Wells Fargo cannot introduce or reference these untimely produced documents at trial. Rule 37(c)(1) requires that "if a party fails to provide information or identify witnesses as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence … at a trial, unless the failure was substantially justified or is harmless." As the Ninth Circuit observed, "Rule 37(c)(1) gives teeth to these requirements [the Rule 26 disclosure obligations] by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). This remedy is "self-executing" and "automatic." *Id.* (citing Fed. R. Civ. P. 37 Advisory Committee's Note (1993)). Exclusion of evidence is an appropriate remedy for failing to fulfill disclosure requirements, even

in the absence of a showing of bad faith or willfulness, and even when the exclusion will preclude a litigant's entire cause of action or defense. *Id.* (citing *Ortiz-Lopez v. Sociedad Espanola de Auilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001)).

Wells Fargo's untimely disclosure of these documents is not "substantially justified." Even after Wells Fargo was told it would be deposed on these procedures and its failure to disclose them, Wells Fargo provided a representative that had no knowledge at all about its reasons for failing to disclose these easily identifiable procedures. All Wells Fargo has been willing to disclose is that its failure was an "oversight" or "mistake." However, "[i]nadvertent mistakes and unintentional oversights are not substantial justifications." *Baltodano v. Wal-Mart Stores, Inc.*, No. 2:10-cv-2062-JCM-RJJ, 2011 WL 3859724 at *2 (D. Nev. Aug. 31, 2011) (citing *R&R Sails v. Ins. Co. of State of Pa.*, 251 F.R.D. 520, 526 (S.D. Cal. 2008)).

During its deposition, Wells Fargo's representative could not even articulate why the undisclosed procedures are even relevant to this case. "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanction to prove harmlessness." *Yeti*, 259 F.3d at 1107. Well Fargo can make no such showing because plaintiff prosecuted this entire action based on the procedures that Wells Fargo produced during discovery. Wells Fargo's untimely disclosure of these procedures is certainly not harmless.

## CONCLUSION

Wells Fargo misled plaintiff during its Rule 30(b)(6) deposition by unambiguosly stating that it had provided all relevant procedures. Then weeks before trial, Wells Fargo provided procedure documents covering the very subject matter of plaintiff's claim. Wells Fargo refused to provide any explanation for its production failure other than cryptic statements from its attorneys that its nondisclosure in violation of the Court's Order and the Rules was "inadvertent" and a

"mistake." This excuse, or lack thereof, is insufficient as a matter of law and dictates that the documents be excluded from trial. But even more, the Court deferred its ruling on admissibility of these procedures and stated that plaintiff should depose Wells Fargo regarding the nondisclosure and report back to the Court for its ruling. In response, Wells Fargo provided a deponent that had no knowledge as to why the documents were not disclosed earlier in compliance with the Court's Order and the Rules. There is no argument that the procedures were not requested or that they were not easily identifiable and clearly responsive to plaintiff's requests.

The Court should deny Wells Fargo's Motion to Supplement its Exhibit List and exclude any reference to these undisclosed procedures by any of Wells Fargo's witnesses at trial.

August 26, 2019.

/s/ Kelly D. Jones
**Kelly D. Jones, OSB No. 074217**
The Law Office of Kelly D. Jones
kellydonovanjones@gmail.com
Telephone: 503-847-4329
Of Attorneys for Matthew Sponer

**CERTIFICATE OF SERVICE**

I certify that I caused this document to be served on the following via the Court's ECF system and via email to:

      Daniel Peterson
      dpeterson@cosgravelaw.com
      Timothy J. Fransen
      tfransen@cosgravelaw.com
      Robert E. Sabido
      rsabido@cosgravelaw.com

      Attorneys for Defendant Wells Fargo Bank, N.A.

Dated: August 26, 2019

                  /s/ Kelly D. Jones
                  **Kelly D. Jones, OSB No. 074217**
                  The Law Office of Kelly D. Jones
                  kellydonovanjones@gmail.com
                  Telephone: 503-847-4329
                  Of Attorneys for Matthew Sponer