**Kelly D. Jones, OSB No. 074217**
The Law Office of Kelly D. Jones
819 SE Morrison St., Suite 255
Portland, Oregon 97214
kellydonovanjones@gmail.com
Direct 503-847-4329

Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MATTHEW SPONER** | Case No. 3:17-cv-2035-HZ |
| Plaintiff | **PLAINTIFF'S REPLY TO MOTION FOR NEW TRIAL** |
| vs | |
| **WELLS FARGO BANK N.A.** | **ORAL ARGUMENT REQUESTED** |
| Defendant | |

# REPLY

On October 24, 2019, plaintiff filed his Motion for New Trial under FRCP 59 (motion). Doc. 129. As set forth in his motion, plaintiff respectfully requests a new trial because **(1)** the Court erred in granting Wells Fargo's motion to supplement its exhibit list with procedure documents not timely disclosed in pretrial discovery, **(2)** the Court should not have allowed Wells Fargo to assert a defense based on its request to plaintiff that he provide documents, and **(3)** the Court improperly instructed the jury to disregard Wells Fargo's net worth in determining punitive damages. On November 21, 2019, Wells Fargo filed its response to plaintiff's motion. Doc. 157. Plaintiff submits this reply.

**1. The Court should not have granted Wells Fargo's motion to supplement its exhibit list with procedure documents not timely disclosed in pretrial discovery.**

Wells Fargo did not show that its failure to produce the withheld procedure documents was "substantially justified" as required by FRCP 37(c)(1). Wells Fargo never offered any evidence of a substantial justification for its failure to disclose the documents. Rather, it simply referred to an "apparent oversight" or "mistake." Doc. 96 at 2; Doc. 105 at ¶ 5. Under the express mandate of Rule 37(c)(1), Wells Fargo "is not allowed to use that information . . . at a trial."

In addition, Wells Fargo's attempt to supplement its exhibit list did not meet the standards established by this Court for exhibits to be received into evidence that were not submitted by the deadlines in the Court's trial management order. That order set a deadline of July 22, 2019 for the submission of the parties' exhibit lists. Doc. 53. Wells Fargo did not include these documents in its exhibit list and did not seek to supplement its exhibit list with the withheld documents until almost a month later, on August 15, 2019. Doc. 96.

The trial management order provides: "Late submissions will not be accepted absent a strong showing of good cause balanced against any prejudice to the opposing party." Doc. 53. Again, on this record, there is simply no showing that Wells Fargo had good cause for its late submissions, much less a "strong showing." In fact, Wells Fargo does not even attempt to argue it was substantially justified or had good cause for its failure to timely produce the documents to plaintiff or include them in its exhibit list.

In its response, Wells Fargo argues that plaintiff's "main gripe is with the timing of the exhibit list amendment in light of the requirement in Fed. R. Civ. P. 26 that an exhibit list be filed '30 days before trial.'" Doc. 157 at 7. However, that is not plaintiff's "main gripe." The motion for new trial relies on the provisions of FRCP 37(c)(1) and the provisions of the Court's trial management order. And, as stated in the motion for

**REPLY TO MOTION FOR NEW TRIAL** – Page 3 of 16

new trial, the failure to produce the documents during the discovery period prevented plaintiff from using those documents in its depositions of the Wells Fargo corporate representative, Bets Burg, the depositions of Wells Fargo's employees, and the depositions of Wells Fargo's experts, Dean Binder and Brian Kelley. Wells Fargo's failure to produce the documents also precluded plaintiff's experts from utilizing those documents in preparing their expert reports, providing their deposition testimony, and preparing for trial.

Although plaintiff does not rely upon the deadline in FRCP 26(a)(3)(B), Wells Fargo argument that the language "unless the court orders otherwise," allowed the Court to grant its motion to supplement its exhibit list is misplaced. The Rule states: "Unless the court orders otherwise, these disclosures must be made at least 30 days before trial." FRCP 26(a)(3)(B). This language simply permits a trial court to set a different time for pretrial disclosures than 30 days before trial. This Court did precisely that and ordered that the exhibit list be submitted by July 22, 2019. Wells Fargo inexcusably failed to meet that deadline.

In its response, Wells Fargo argues that "it supplemented its production and moved to supplement its exhibit list as soon as it discovered that the written procedures in Exhibit 560 had not previously been disclosed. Because defendant voluntarily and promptly supplemented its production and exhibit disclosures, it complied with

**REPLY TO MOTION FOR NEW TRIAL** – Page 4 of 16

Rule 26(a) and (e). As a result, Rule 37(c)(1) does not apply here." Doc. 157 at 14-15. This argument is fallacious.

Wells Fargo's argument that Rule 37(c)(1) does not apply because it "supplemented" its disclosures by providing the previously withheld documents long after discovery closed and on the eve of trial does not comply with the requirements of the rules. If this were true, then a party could withhold documents until just before trial with impunity. Of course, that is not what the rules contemplate. This is why the Advisory Committee Notes to FRCP 26 states that the supplementation must be made "at appropriate intervals *during the discovery period.* . . ." (emphasis added).

In *Depew v. Shopko Stores*, Inc., No. 03-0539-S-BLW, 2006 WL 47357, 2006 U.S. Dist. LEXIS 1918, at *8-9 (D. Idaho Jan. 6, 2006), the court rejected that very same argument, finding that such a reading "would be absurd" because the "prejudice resulting from an 'eve-of-trial' supplemental disclosure (after the close of discovery) is the same as if no disclosure whatsoever was made prior to trial." The court held that the defendant needed to show that the supplemental disclosure just two months prior to trial was either substantially justified or harmless. *Id.* at *9.

Rule 26(e) creates a duty to supplement, not a right. *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir.

**REPLY TO MOTION FOR NEW TRIAL** – Page 5 of 16

2009). Rule 26(e) does not "create a loophole through which a party ... who wishes to revise [its] initial disclosures ... can add to them to [its] advantage after the court's deadline for doing so has passed." *Id*. "Rather, [s]upplementation under the Rules means correcting inaccuracies ... based on information *that was not available at the time of the initial disclosure.*" *Id.* (emphasis added) (internal quotes and citation omitted). Here, the documents withheld were not newly discovered or ones that could not have been disclosed within the time frame set by the Court's scheduling order or the close of discovery. Wells Fargo *always* had these documents and has never provided any justification for them being withheld until weeks before trial, let alone a substantial one.

Because Wells Fargo withheld critical documents until long after discovery closed and less than three weeks before trial, Rule 37(c)(1) was automatically triggered and it had the burden to show substantial justification or harmlessness. It did not do so. The Court's failure to exclude the withheld procedure documents caused extreme prejudice to plaintiff. Plaintiff prosecuted his entire case based on the procedures that Wells Fargo had produced, including extensive written discovery, numerous depositions of Wells Fargo's employees, the retention of experts whose opinions were based on the procedures Wells Fargo produced, the depositions of Wells Fargo's experts which were based on

**REPLY TO MOTION FOR NEW TRIAL** – Page 6 of 16

the procedures that Wells Fargo had produced, and exhaustive trial preparation. Given the proximity to trial of Wells Fargo's production, plaintiff was prevented from conducting sufficient and timely discovery, including questioning Wells Fargo's initial FRCP 30(b)(6) witness, its ACDV operators, Wells Fargo's experts, and preparing plaintiff's own experts. *See, e.g.*, *Melczer v. Unum Life Ins. Co. of Am.*, 259 F.R.D. 433, 435-36 (D. Ariz. 2009) (granting plaintiff's motion in limine excluding documents that were in possession of defendant but not produced until after discovery closed because late production was not substantially justified or harmless as plaintiff would have sought additional discovery relating to the documents, and rejecting attempt to distinguish *Yeti* on the basis that *Yeti* involved the late production of an expert report rather than documents because "Rule 37(c)(1) makes no such distinction."); *McClure v. Country Life Ins. Co.*, No. CV-15-02597-PHX-DLR, 2017 WL 3719880, 2017 U.S. Dist. LEXIS 138530, at *6-8 (D. Ariz. Aug. 28, 2017) (excluding untimely produced documents at trial because they were provided after the close of discovery, the untimely disclosure was not substantially justified because "[m]ere inadvertence in copying the single most important exhibit in this case, however, is not substantial justification," and was not harmless because plaintiff relied on the timely produced documents in the claims file to craft his theories of liability and in obtaining expert opinions, and because "there is no

**REPLY TO MOTION FOR NEW TRIAL** – Page 7 of 16

fair, non-prejudicial method of amending the claims file at trial when Plaintiff has litigated this case for two years in reliance on the completeness of the file as originally produced.").

In its response, Wells Fargo also repeats its misleading statement that Wells Fargo's FRCP 30(b)(6) witness, Bets Berg, discussed the withheld procedure documents during her deposition, making the withholding of the procedure documents harmless. Doc. 157 at 8. As set forth in detail in plaintiff's opposition to Wells Fargo's motion to supplement its exhibit list, this continued mischaracterization of Ms. Berg's deposition testimony is demonstrably false. Ms. Burg not only failed to discuss any additional procedures for investigating disputes related to fraud or identity theft, she denied that any such procedures existed. *See* Doc. 100 at 4-5; Doc. 101-2 ("**Q**. Maybe my question wasn't clear. Are there other policies and procedures that relate to credit bureau disputes than these? **A**. I believe that there could be other procedures that are related to credit bureau disputes, yes, but were not relevant to this case. They did not – they don't have anything to do with identity theft procedures.").

## 2. The Court should not have allowed Wells Fargo to assert a defense based on its request to plaintiff that he provide documents.

Plaintiff's motion in limine was to preclude any evidence in support of a defense based on Wells Fargo's request to plaintiff that he provide

**REPLY TO MOTION FOR NEW TRIAL** – Page 8 of 16

certain documents. As explained in plaintiff's motion in limine and at the pretrial conference, the motion was narrow. Plaintiff was not arguing that Wells Fargo could not assert that it did not have all the information it wanted or that it did a reasonable investigation based on the information it had. Plaintiff's motion was directed at a defense that was based on plaintiff not providing documents that Wells Fargo had requested from plaintiff. Wells Fargo now argues that it did not intend to, and did not, assert such a defense. But that is precisely the defense that Wells Fargo asserted over and over again throughout the trial.

Wells Fargo's expert witness, Dean Binder, testified that it was reasonable for Wells Fargo to request that plaintiff provide additional documentation before conducting its investigation of his disputes. Doc. 130-2, 611:21-617:14. He specifically testified that investigating identity theft "does require some work for the victim" to provide documentation to the furnisher. *Id*. at 615:25-616:1.

Wells Fargo's second expert witness, Brian Kelley, also repeatedly referred to plaintiff's failure to provide the documents that Wells Fargo had requested in its letter of October 26, 2016. Doc. 130-2, 659:10-16; 668:1-15; 672:22-673:5.

Allowing Wells Fargo to assert a defense to a claim under FCRA § 1681s-2(b) based on its request that plaintiff provide documents is directly contrary to the provisions of that statute. Section 1681 s-2(b)

**REPLY TO MOTION FOR NEW TRIAL** – Page 9 of 16

provides that if a furnisher receives notice of a consumer's dispute from a credit reporting agency, it "shall (A) conduct an investigation with respect to the disputed information." Section 1681s-2(b) does not allow a furnisher to avoid or delay its investigation because it has requested that the consumer provide information. The statutory language is clear. *See Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 619 n.6 (6th Cir. 2012). "§ 1681s-2(b) does not specifically permit information furnishers to demand further documentation from consumers before conducting an investigation."; *Fregoso v. Wells Fargo Dealer Servs., Inc.*, No. 11-cv-10089-SJO-AGRx, 2012 WL 4903291, at *9 (C.D. Cal. Oct. 16, 2012).

An entirely different section of the FCRA, § 1681s-2(a), does allow a furnisher who gets a direct dispute from a consumer to avoid performing an investigation if the furnisher finds the dispute is frivolous or irrelevant, which can be based on the failure of a consumer to provide sufficient information. 15 U.S.C. § 1681s-2(a)(8)(F). However, this subsection was not a part of plaintiff's claim and does not provide a private right of action to consumers. 15 U.S.C. § 1681s-2(c)(1)-(2).

Wells Fargo's defense based on its request to plaintiff for further documentation improperly incorporated provisions of § 1681s-2(a) into a defense to a claim based on § 1681s-2(b). This improper use of the provisions in § 1681s-2(a) to defend a claim under § 1681s-2(b), contrary to the express terms of § 1681s-2(b) and the caselaw, was made crystal

**REPLY TO MOTION FOR NEW TRIAL** – Page 10 of 16

clear by the testimony of Wells Fargo's witness Brian Kelley. Mr. Kelley testified as follows when asked if plaintiff had to do anything more to get his credit report corrected other than dispute to a CRA:

> **Q.** Well, he didn't have to send anything to get his credit report corrected, other than a dispute to a CRA, did he?
>
> **A.** Well *and again I'm suggesting I don't agree with that*. But I think *the bank*, if it's required to conduct an investigation into identity fraud, *is entitled to -- to ask for information and expect some level of cooperation from -- from the consumer*.

Doc. 130-2, 668:9-15 (emphasis added).

Through Mr. Kelley and its other witnesses, Wells Fargo presented a defense wholly inconsistent with the terms and intent of § 1681s-2(b). It asserted that it did not have to investigate or correct the error on plaintiff's credit report unless and until plaintiff provided the information it had requested. It was error for the Court to deny plaintiff's motions in limine as to evidence and expert testimony and allow such a defense.

Wells Fargo also argues that its request to plaintiff for documents was part of its investigation in response to receiving the ACDVs. That is flatly incorrect. The Wells Fargo letter to plaintiff requesting documents was sent on October 26, 2016. Ex. 501. The first ACDV indicates it was not received by Wells Fargo until October 29, 2016. Ex. 33 at 1.

Wells Fargo also attempts to argue that plaintiff's own experts agreed that the body of information Wells Fargo had accumulated in its

**REPLY TO MOTION FOR NEW TRIAL** – Page 11 of 16

fraud investigation was relevant to whether its investigation of the ACDVs was reasonable. That is a completely separate issue than the one related to plaintiff's motion in limine. In his motion, plaintiff was not seeking to limit Wells Fargo from testifying about information it had or did not have at the time it received the ACDVs. Instead, plaintiff sought to exclude any evidence or testimony in support of a defense based on Wells Fargo's request to plaintiff that he provide certain documents. It was the reference to Wells Fargo's request to plaintiff and plaintiff's response or failure to respond that plaintiff sought to exclude.

This improper defense was extremely harmful to plaintiff. The jury was led to understand that Wells Fargo's violations of the FCRA were not reprehensible enough to warrant punitive damages because plaintiff had not provided documents it had requested.

### 3. The Court should not have instructed the jury to disregard Wells Fargo's net worth.

The Court's instruction to the jury that it not consider the agreed-upon net worth of Wells Fargo in reaching its decisions in the case was plain error. The Court decided to give that instruction after Wells Fargo moved for a mistrial and offered the alternative of the "curative" instruction following plaintiff's closing argument.

Plaintiff's closing argument was not improper. Plaintiff suggested different amounts for actual damages and punitive damages that the jury could award but emphasized that the amount of damages was up to

**REPLY TO MOTION FOR NEW TRIAL** – Page 12 of 16

them to decide. Doc. 130-2, 816:17. Prior to the verdict, no one could know what amounts the jury would award for either actual damages or punitive damages, and whether any such awards would raise constitutional issues. After the verdict, a due process review as to the amount of damages would be conducted by the court, *if needed,* in light of the amounts actually awarded. No such review can be done prior to the verdict. Plaintiff is not aware of any authority, nor has Wells Fargo pointed to any, that place some predetermined limit on the amount of actual damages or punitive damages that can be suggested to the jury, or that it is improper for counsel to suggest amounts for damages that a court might later determine do not comport with due process, or need to be remitted, *if* awarded by the jury.

Just prior to giving the closing argument, the Court expressly stated that plaintiff could inform the jury of Wells Fargo's net worth and that the jury could consider that net worth in determining the amount of punitive damages. Plaintiff then gave his closing argument, stating the agreed-upon net worth, and informing the jury it could consider the net worth in determining the amount of punitive damages, as the Court stated plaintiff could do. Plaintiff mentioned several different amounts that the jury might award for punitive damages but emphasized that it was the jury that had to decide the amount.

**REPLY TO MOTION FOR NEW TRIAL** – Page 13 of 16

Wells Fargo and plaintiff made a pretrial stipulation of fact that Wells Fargo had a net worth of $165 billion. Doc. 130-2, 711:18-713:12. The stipulation on net worth was to be read by the Court as part of the jury instructions. *Id.* at 713:5-9. Because Wells Fargo had stipulated that the jury would be informed of its net worth, it waived any objection to the jury being told its net worth or any request that the Court instruct the jury to disregard Wells Fargo's net worth in reaching its verdict.

As the caselaw cited in plaintiff's motion makes clear, net worth is relevant and admissible in a case involving punitive damages. This Court followed that well-established law in deciding to inform the jury of its net worth.

The Court's erroneous instruction to the jury to disregard Wells Fargo's net worth was extremely prejudicial and harmful to plaintiff. It came shortly after plaintiff made a closing argument in which he stated that the jury would be informed about the net worth and could consider it in determining the amount of punitive damages, as the Court had permitted.

The jury then returned a verdict finding that Wells Fargo had willfully failed to comply with the FCRA but awarding no punitive damages. That is an extremely unusual and contradictory verdict. A logical explanation is that the Court's instruction to the jury to disregard Wells Fargo's net worth left the jurors without a standard to determine

**REPLY TO MOTION FOR NEW TRIAL** – Page 14 of 16

an amount of punitive damages that would accomplish the purposes of punitive damages – to punish and deter such misconduct – for a large company such as Wells Fargo.

## CONCLUSION

For all of the reasons set forth in plaintiff's motion and this reply, the Court should grant plaintiff's motion for a new trial.

December 5, 2019

**RESPECTFULLY FILED,**

s/ Kelly D. Jones
**Kelly D. Jones, OSB No. 074217**
Of Attorneys for Plaintiff
The Law Office of Kelly D. Jones
819 SE Morrison St., Suite 255
Portland, Oregon 97214
kellydonovanjones@gmail.com
Direct 503-847-4329

**REPLY TO MOTION FOR NEW TRIAL** – Page 15 of 16

# CERTIFICATE OF SERVICE

  I certify that on the date below, I caused this document and all attachments to be served on the parties to this action via ECF.

December 5, 2019

        s/ Kelly D. Jones
        **Kelly D. Jones, OSB No. 074217**
        Of Attorneys for Plaintiff
        The Law Office of Kelly D. Jones
        819 SE Morrison St., Suite 255
        Portland, Oregon 97214
        kellydonovanjones@gmail.com
        Direct 503-847-4329