IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MATTHEW SPONER,                                          No. 3:17-cv-02035-HZ

                Plaintiff,

    v.

WELLS FARGO BANK N.A.,                                   OPINION & ORDER

                Defendant.

Robert S. Sola
Robert S. Sola, P.C.
1500 SW First Avenue, Suite 800
Portland, Oregon 97201

Jeffrey B. Sand
Weiner & Sand LLC
800 Battery Ave SE, Suite 100
Atlanta, Georgia 30339

Kelly D. Jones
Kelly D. Jones, Attorney at Law
819 SE Morrison St., Suite 255
Portland, Oregon 97214

Michael Fuller
OlsenDaines
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204

      Attorneys for Plaintiff

Robert E. Sabido
Timothy J. Fransen
Daniel C. Peterson
Julie Annette Smith
Cosgrave Vergeer Kester LLP
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Matthew Sponer brought this action against Defendant Wells Fargo, alleging that Defendant negligently and willfully violated the Fair Credit Reporting Act ("FCRA"). On September 3, 2019, a jury found for Plaintiff on all counts, and awarded $101,000 in actual damages and $0 in punitive damages.

      Before the Court are (1) Plaintiff's motions for attorneys' fees, costs, and expenses and (2) Defendant's motion for costs. For the reasons that follow, Plaintiff's motions are granted in part and denied in part. Defendant's motion is granted in part. Plaintiff is awarded $398,576.25 in attorneys' fees and $14,599.45 in costs. Defendant is awarded $10,368 in costs.

## DISCUSSION

### I.    Costs

      Under Rule 54(d)(1), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party." *Fed. R. Civ. P. 54(d)(1)*. "By its terms, the rule creates a presumption in favor of awarding costs to the prevailing party." *Ass'n of*

*Mexican–Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000). "[I]f a district court wishes to depart from that presumption, it must explain why so that the appellate court will be able to determine whether or not the trial court abused its discretion." *Id.* at 593 (citations and quotation marks omitted). In denying costs, a court may consider "the losing party's limited financial resources, misconduct on the part of the prevailing party, the importance and complexity of the issues, the merit of the plaintiff's case, . . . and the chilling effect on future . . . litigants of imposing high costs." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003) (citations omitted). If awarding costs, however, the court "needs no affirmatively expressed reason . . . . Rather, it need only conclude that the reasons advanced by the party bearing the burden—the losing party—are not sufficiently persuasive to overcome the presumption." *Id.* at 946.

Plaintiff moves for costs as the prevailing party. Defendant moves for costs based on Federal Rule of Civil Procedure 68 and an unaccepted offer of judgment. The Court will address Defendant's motion first.

### a. Defendant's Costs

Under Rule 68, "a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). "[I]f a plaintiff rejects a defendant's offer of judgment, and the judgment finally obtained by plaintiff is not more favorable than the offer, the plaintiff must pay the costs incurred subsequent to the offer. The award is mandatory; Rule 68 leaves no room for the court's discretion." *United States v. Trident Seafoods Corp.*, 92 F.3d 855, 859 (9th Cir. 1996).

On July 22, 2019, Defendant made an offer of judgment in the amount of $165,000.01 plus reasonable attorney fees and costs. While Plaintiff prevailed on his claims at trial, the jury

awarded only $101,000 in actual damages and $0 in punitive damages. Thus, Plaintiff obtained a judgment less favorable than Defendant's July 22, 2019 offer of judgment.

Plaintiff raises two arguments as to why this offer of judgment should not result in costs for Defendant. First, Plaintiff argues that Defendant withheld critical documents, which hindered Plaintiff's ability to assess the offer. Plaintiff cites no cases to support this argument. Even if the argument were supported, the Court is not convinced that these documents were, in fact, critical to Plaintiff's ability to evaluate the offer. Significantly, the Court notes that Plaintiff received and rejected an additional offer of judgment—in the amount of $200,000.01, plus reasonable attorney fees and costs—days *after* he received the documents at issue. This argument is therefore without merit.

Second, Plaintiff argues that the judgment at trial was, in fact, "more favorable" than the July 22nd offer of judgment. Specifically, while the offer of judgment did not include an admission of liability, the jury found that Wells Fargo (1) negligently and willfully violated the law and (2) caused Plaintiff actual damage. Again, Plaintiff cites no support for this position. While the Ninth Circuit has not considered this exact argument, it has considered the analogous question of whether an offer for the full amount demanded in a complaint, without an admission of liability, may moot a case altogether. *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1142 (9th Cir. 2016). In *Chen*, the defendant made an offer for the full amount demanded in the complaint, as well as injunctive relief. *Id.* at 1139–40. While plaintiff argued that defendant had not agreed to complete relief because the offer did not include an admission of liability, the Ninth Circuit did not agree. *Id.* at 1141–42. Instead, it noted that plaintiff's complaint sought only "statutory damages and injunctive relief, not an admission of liability or a declaration that [the defendant] violated his rights[]" and found that "[w]hen a plaintiff has received all the relief [he] could win

on the merits, an adjudication would have no consequences on remaining related disputes between the parties and nothing further would be ordered by the court, there is no point in proceeding to decide the merits." *Id.* at 1142 (quotation omitted).

While Plaintiff now states by affidavit that, because he filed this case to hold Defendant accountable, any settlement without an admission of liability was not acceptable, the Court is not persuaded. Like in *Chen*, Plaintiff's complaint did not seek an admission of liability. Instead, Plaintiff requested only "actual damages and punitive damages in amounts to be decided by the jury, and for attorney fees and costs in an amount to be decided by the Court." Compl. at 8, ECF 1. The Court cannot find, under the circumstances of this case, that an admission of liability was necessary to afford complete relief and that the judgment at trial was less favorable than the offer of judgment.

Defendant is therefore entitled to costs incurred after July 22, 2019. After reviewing the bill of costs, the Court strikes those costs associated with two depositions taken *before* July 22, 2019, reducing the award by $1,260.29. *See* Fransen Decl. Ex. 2 at 1–2, ECF 150-2. Additionally, as 28 U.S.C. § 1821 requires that "a witness shall utilize a common carrier at the most economical rate reasonably available," the Court reduces Brian Kelley's $1,098.01 first-class airline ticket for travel between Orange County, California and Portland, Oregon by half. *See* Fransen Decl. Ex. 3 at 1, ECF 150-3; *see also Shum v. Intel Corp.*, 682 F.Supp.2d 992, 1002 (N.D. Cal. 2009) (finding that first class airfare was not allowable under § 1821 and, because there was "no evidence in the record as to the actual cost of a coach versus a first-class ticket," reducing the "reimbursement for this cost by half."). The Court thus awards Defendant a total of $10,368.

**b. Plaintiff's Costs**

For the reasons stated above, Plaintiff is not entitled to recover costs incurred after July 22, 2019. *See also* Fed. R. Civ. P. 68 (d) ("If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."). However, as the prevailing party, Plaintiff is still entitled to recover costs incurred before that date. Of those costs, Defendant objects to (1) the deposition of Cathy McRorie, "who had nothing to do with plaintiff's FCRA claims and whose deposition was not used at all at trial;" (2) unexplained "docket fees;" and (3) "unexplained and unjustified costs for printing." Def. Resp. 24, ECF 162.

Under Rule 54(d), taxable costs "are limited to those set forth in 28 U.S.C. §§ 1920 and 1821[.]" *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005). Section 1920 provides that:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title . . . .

28 U.S.C. § 1920. A bill of costs must include a "detailed itemization of all claimed costs," along with "an affidavit or declaration and appropriate documentation." Local Rule 54.

In response to Defendant's objections, Plaintiff first concedes the costs associated with obtaining Ms. McRorie's deposition. The Court therefore reduces the award by $250. Plaintiff

explains, however, that the $400 charge is indeed the court filing fee, and should have been listed as a "Fee of the Clerk." Such a filing fee is recoverable under § 1920. *See* 28 U.S.C. § 1914(a) (clerk shall require parties instituting any civil action, "whether by original process, removal or otherwise," to pay a filing fee); § 1920(1) (fees of the clerk recoverable as costs); *see also Coach, Inc. v. Siskiyou Buckle Co., Inc.*, No. 03:11-cv-00486-HZ, 2012 WL 13055491, at *1 (D. Or. Oct. 30, 2012) (allowing recovery of $350 filing fee in bill of costs). The Court therefore declines to strike this cost.

Finally, as to the challenged printing costs, the Court finds Defendant's objections well taken. At a minimum, a prevailing party must itemize its costs with enough detail to establish that they are, indeed, taxable costs. For example,

> recoverable copying costs do not include extra copies of filed papers, correspondence, and copies of cases since these are prepared for the convenience of the attorneys. Recoverable copying costs also do not include costs associated with in-house photocopying for use by counsel.

*U.S. ex rel. Berglund v. Boeing Co.*, No. 03:02-cv-193-AC, 2012 WL 697140, at * 4 (Feb. 29, 2012) (quotations omitted). "A party's conclusory assertion that all copies were reasonably necessary to its case is, by itself, insufficient." *Id.*

Here, Plaintiff has provided the Court with thirty-eight pages of invoices and receipts, and argues only that these "printed receipts all evidence necessary costs of creating trial binders and other required printed materials necessary for use at trial." Pl. Reply 35 n.2, ECF 168. Yet these standardized receipts contain no useful information beyond the date of purchase. Plaintiff provides no additional description as to *what* was printed, and for what purpose. In other words, Plaintiff has failed to explain the nature of the charges, and the Court cannot not determine which costs, if any, are properly awardable. *See U.S. ex rel. Berglund*, 2012 WL 697140, at *4 ("The exhibits attached to verify Boeing's print and copy costs reflect only the date and amount

of the charges for the print-outs and copies but do not describe the purpose for which the

documents were printed or copied. The court . . . [cannot] determine the nature of the

photocopying charges and which costs, if any, were properly awardable. Accordingly, the court

disallows this item of cost in its entirety.")  The Court therefore strikes $4,439.87, Plaintiff's

"cost bill for printing."

In sum, by the Court's calculation, Plaintiff incurred $11,436.42 in deposition and

transcript costs after July 22, 2019. As noted above, these costs are not allowed. With the

additional restrictions explained herein, the Court therefore awards Plaintiff his costs in the

amount of $14,599.45.

## II.    Motion for Expenses

Plaintiff moves, in the alternative, to recover his expenses under Federal Rule of Civil

Procedure 37(c)(2). Rule 37(c)(2) provides:

> Failure to Admit. If a party fails to admit what is requested under Rule 36 and if
> the requesting party later proves a document to be genuine or the matter true, the
> requesting party may move that the party who failed to admit pay the reasonable
> expenses, including attorney's fees, incurred in making that proof. The court must
> so order unless:
>
> (A) the request was held objectionable under Rule 36(a);
>
> (B) the admission sought was of no substantial importance;
>
> (C) the party failing to admit had a reasonable ground to believe that it might
>      prevail on the matter; or
>
> (D) there was other good reason for the failure to admit.

Plaintiff argues that Defendant failed, in its response to a request for admission under

Rule 36, to admit that it "negligently violated the Fair Credit Reporting Act in or more [sic] ways

with respect to Mr. Sponer's credit report as alleged in Mr. Sponer's complaint in this lawsuit."

Fuller Decl., Ex. 1, ECF 140-1. Thus, according to Plaintiff, because Defendant admitted

negligence at trial, the Court must order Defendant to pay *all* reasonable expenses incurred through the end of trial.

Defendant argues that Plaintiff should not be awarded expenses under Rule 37(c)(2) because the request for admission was improper in the first instance. Rule 36(a)(1)(A) permits requests for admissions as to "facts, the application of law to fact, or opinions about either." However, "[r]equests for purely legal conclusions . . . are generally not permitted." *Benson Tower Condominium Owners Ass'n v. Victaulic Co.*, 105 F. Supp. 3d 1184, 1195 (D. Or. 2015). In *Benson*, the plaintiff requested an admission from defendant that the products at issue were defective. *Id.* The court found that

> although Plaintiff has nominally tied its RFAs [Requests for Admissions] to the facts of the case, the request remains a legal conclusion: whether or not the Victaulic products are defective under Oregon law. The Disputed RFAs did not specifically request the admission of underlying facts that may be used to establish that the Victaulic products were defective, which may well have been appropriate RFAs. Rather, the Disputed RFAs merely requested the admission of the legal conclusion that the Victaulic products are defective. Under these circumstances, Defendant's objections to the Disputed RFAs were not improper and the Court denies Plaintiff's motion for fees on this basis.

*Id.* at 1196.

Here, like in *Benson*, the Court sees no specific request for the admission of any underlying facts that could be used to establish a negligent violation of the FCRA. To the contrary, Plaintiff has not attempted—even nominally—to tie its request to the facts of the case. Instead, Plaintiff requests the admission of a legal conclusion: that Defendant negligently violated the FCRA. Because the request for admission under Rule 36 was improper, the Court therefore denies Plaintiff's motion for expenses under Rule 37.

### III.   Attorneys' Fees

Plaintiff requests $698,175.00 in attorneys' fees under 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2) of the FCRA. Both § 1681n(a)(3) and § 1681o(a)(2) provide that, "in the case of any successful action to enforce any liability under this section," a consumer is entitled to "the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2); *Miller v Equifax Info. Servs., LLC*, No. 3:11-CV-01231-BR, 2014 WL 2178257, at *1 (D. Or. May 23, 2014) (a party who is successful in an action under the FCRA is entitled to recover attorney fees and costs). At trial, the jury found that Wells Fargo willfully and negligently failed to comply with the requirements of the FCRA; an award of attorneys' fees is therefore appropriate.

Once a court has determined that an award is appropriate, the court must calculate what attorney fees are reasonable. Under a fee-shifting statute, the "lodestar" method is used to calculate the attorneys' fee award. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). To determine the "lodestar" amount, the court multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *Id.* If circumstances warrant, the court then adjusts the lodestar to account for the *Kerr* factors not subsumed within the initial lodestar calculation.[1] *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). These factors include the novelty or difficulty of the case, the preclusion of other employment, time limitations, the amount at stake, the results obtained, and the undesirability of the case. *Id.* at 363 n.8. The court

---

[1] Factors subsumed within the lodestar include "the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, the results obtained, and the superior performance of counsel." *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1383 (9th Cir. 1990).

need only address those factors not already subsumed in its lodestar analysis. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

The district court possesses "considerable discretion" in determining the reasonableness of a fee award. *Webb v. Ada County*, 195 F.3d 524, 526 (9th Cir. 1999). While there is a strong presumption that the lodestar figure represents a reasonable fee, the court may adjust the lodestar in "rare" and "exceptional" cases. *See Pennsylvania v. Citizens' Council for Clean Air Delaware Valley*, 478 U.S. 546, 565 (1986). While it is not necessary to detail every numerical calculation, and across-the-board percentage adjustments are permissible, the court must provide "enough of an explanation to allow for meaningful review of the fee award." *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001).

### a. Reasonable Hourly Rates

In reviewing the reasonable hourly rate, the court determines what a lawyer of comparable skill, experience, and reputation could command in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Robins v. Scholastic Book Fairs*, 928 F. Supp. 1027, 1033 (D. Or. 1996). "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). Judges in the District of Oregon use the Oregon State Bar Economic Survey ("OSB Economic Survey") as a benchmark for assessing the reasonableness of hourly billing rates. *See* Local Rule 54-3 Practice Tip ("[T]he Court requests that fee petitions address the Economic Survey and provide justification for requested hourly rates higher than reported by the

Survey."); *Roberts v. Interstate Distrib. Co.*, 242 F. Supp. 2d 850, 857 (D. Or. 2002) (in determining the reasonable hourly rate, the District of Oregon uses the OSB Economic Survey "as an initial benchmark" and attorneys should "provide ample justification" for deviating from the Survey rates). Courts may also consider "the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases." *Moreno v. City of Sacrament*, 534 F.3d 1106, 1114 (9th Cir. 2008).

Plaintiff seeks fees based on an hourly rate of $675 for Mr. Sola, $450 for Mr. Sand, $525 for Mr. Fuller, and $450 for Mr. Jones. In support of these hourly rates, Plaintiff relies on affidavits from each attorney, and a declaration from local attorney Justin Baxter. Defendant objects to each requested rate as excessive.

In objecting to these requested rates, Defendant raises a number of arguments that apply equally to each of Plaintiff's attorneys. For example, Defendant argues that the issues in this case were neither novel nor difficult. The Court agrees. Plaintiff has failed to provide any argument or analysis to support his position that this was not a "typical" FCRA case. *See* Pl. Reply 28–29. Additionally, as Judge Mosman explained in 2005—in response to a request for attorney's fees from Mr. Sola—the "FCRA is a legal specialty that plaintiff's counsel had already mastered prior to pursuing this litigation. Counsels' hourly rate already reflects this mastery, and counsel do not receive a premium because of it." *Kirkpatrick v. Equifax Information Services, LLC*, No. Civ. 02–1197MO, Civ. 03–199–MO, 2005 WL 1231485, at *2 (D. Or. May 23, 2005).

Moreover, the Court cannot find that Mr. Baxter's declaration justifies the requested hourly rates. Mr. Baxter merely recounts the attorneys' experience and opines that the requested rates are reasonable; he offers no additional or unique insight or evidence. Mr. Baxter also appears to rely, at least in part, on the Morones Survey of Commercial Litigation Fees 2018

Summary Report, which this district has repeatedly found "does not meet the Ninth Circuit's or this district's requirements to serve as evidence of prevailing market rates." *Sturgis v. Asset Acceptance, LLC.*, Civ. No. 3:15-cv-00122-AC, 2016 WL 3769750, at *4 (D. Or. July 14, 2016); *Miller v. Equifax Information Services*, *LLC*, No. 3:11–CV–01231–BR, 2014 WL 2178257, at *2 (D. Or. May 23, 2014) ("the Court similarly declines to consider the Morones Survey in this case and relies on the OSB Survey to determine the reasonableness of the hourly rates requested by [plaintiff]"). The Court also notes that Mr. Baxter, without explanation, appears to have applied different inflation rates to different attorneys' fee requests. He does not appear to have used the CPI Inflation Calculator from the United States Department of Labor[2] in any of his calculations. The Court therefore affords this evidence little weight in its assessment of a reasonable hourly rate.

The Court will address the remaining arguments as to each attorney's individual rate in turn.

### i. Robert Sola

Plaintiff requests a rate of $675 per hour for Mr. Sola. Mr. Sola has practiced law for thirty-five years. According to the OSB Economic Survey, the median hourly rate for Portland lawyers with more than thirty years of experience was $425 in 2016. The 75th percentile hourly rate was $495, and the 95th percentile hourly rate was $610. Using the CPI Inflation Calculator, those rates would equal approximately $465, $540, and $665 today.

Mr. Sola relies on his experience and specialization. His practice has included FCRA litigation for the past twenty-two years and has focused almost exclusively on the FCRA for the past seventeen. His FCRA cases have resulted in multi-million-dollar verdicts, and he was

---

[2] Available at https://data.bls.gov/cgi-bin/cpicalc.pl.

named Trial Lawyer of the Year in 2003 by the National Association of Consumer Advocates. Additionally, he has chaired and co-chaired the FCRA Litigation Conference and spoken at many CLEs.

The Court finds that Mr. Sola's thirty-five years of experience is adequately represented by the OSB Survey rates. While the Court acknowledges Mr. Sola's specialized experience in the field of FCRA litigation, the Court cannot find that such experience justifies a rate that exceeds the 95th percentile billing rate in the relevant community—especially in light of this Court's findings regarding the lack of any particularly novel or difficult issues. To the extent this case may have precluded other employment, Mr. Sola is well compensated by the 697.7 hours billed. The Court therefore finds that a rate at the 75th percentile, adjusted for inflation to $540 per hour, is reasonable in this case.[3]

### ii. Jeffrey Sand

Plaintiff requests a rate of $450 per hour for Mr. Sand. Mr. Sand has practiced law for eleven years. According to the OSB Economic Survey, the median hourly rate for Portland lawyers with ten to twelve years of experience was $300 per hour in 2016. The 75th percentile hourly rate was $340, and the 95th percentile hourly rate was $410. Adjusted for inflation, those rates would equal approximately $330, $370, and $450 per hour today.

Mr. Sand argues for higher rates based on his experience in FCRA litigation. He points to his presentations at CLEs, his involvement as amicus counsel on behalf of the National Consumer Law Center and National Association of Consumer Advocates, and various awards he

---

[3] In his reply, Plaintiff also argues that Jeff Edelson—an attorney with four years less experience than Mr. Sola—"recently sought an attorney fee at the hourly rate of $633, in *Llanes v. Zalewski*, No. 3:18-cv-00267-SB, Doc. 84." Pl. Reply 27. In that case, however, the court denied Mr. Edelson's request for attorney fees altogether. *See Llanes v. Zalewski*, No. 3:18-cv-00267-SB, 2020 WL 207938 (D. Or. Jan. 14, 2020).

has received from the legal community. Again, the Court cannot find that this experience justifies an hourly rate higher than the 95th percentile. Given the nature of the case, the evidence in the record, and Mr. Sand's experience, the Court finds that the median hourly rate, adjusted for inflation to $330 per hour, is reasonable in this case.

### iii.  Michael Fuller

Plaintiff requests a rate of $525 per hour for Mr. Fuller. Mr. Fuller has practiced law for ten years. According to the OSB Economic Survey, the median hourly rate for Portland lawyers with ten to twelve years of experience was $300 per hour in 2016. The 75th percentile hourly rate was $340, and the 95th percentile hourly rate was $410. Adjusted for inflation, those rates would equal approximately $330, $370, and $450 per hour today.

In support of his requested rate, Mr. Fuller submits that he is regularly paid his "market rate" of $525 in private practice for hourly clients and contingency cases. Mr. Fuller also points to (1) his pro bono work, (2) the purpose of the fee shifting provision, and (3) his recognition by Super Lawyers Magazine and Martindale-Hubbel.

While the Court commends pro bono work, and understands the purpose of the fee shifting provision, Mr. Fuller provides no citation or persuasive argument as to how these factors might influence the Court's analysis of the hourly rate of a lawyer of comparable skill, experience, and reputation in the relevant community. The Court also notes that Mr. Fuller's previous fees awards do not support his position. Instead, these awards appear to represent only uncontested, negotiated settlements, with no independent legal analysis from any court. The attached orders do not contain detail that might allow this Court to meaningfully compare the issues in those cases with the issues in the present one. Thus, given the nature of the case, the evidence in the record, and the fact that Mr. Fuller is at the low end of the OSB Survey's ten to

twelve-year aggregated estimate, the Court finds that the median hourly rate, adjusted for inflation to $330 per hour, is reasonable in this case.

### iv.   Kelly Jones

Plaintiff requests a rate of $450 per hour for Mr. Jones. Mr. Jones has practiced law for twelve years. According to the OSB Economic Survey, the average hourly rate for Portland lawyers with ten to twelve years of experience was $300 per hour in 2016. The 75th percentile hourly rate was $340, and the 95th percentile hourly rate was $410. Again, adjusted for inflation, those rates would equal approximately $330, $370, and $450 per hour today.

In support of his requested rate, Mr. Jones argues that $450 is his usual and customary rate and that he has significant experience in consumer protection litigation in Oregon. Without further argument or support, the Court finds that the median hourly rate, adjusted for inflation to $330 per, accounts for Mr. Jones' experience and is reasonable in this case.

### b.   Hours Reasonably Expended

It is the fee claimant's burden to demonstrate that the number of hours spent on the case was "reasonably necessary" to the litigation and that counsel made "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("Plaintiffs bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their [ ] claims.").[4]

---

[4] Defendant first argues the Court should deny or reduce the motion for attorneys' fees because Plaintiff's counsel failed to confer before filing. Plaintiff argues that counsel *did* confer, that Defendant opposed the motion, and that Defendant made no offer to settle fees or expenses. The Court need not resolve this dispute; even if Plaintiff failed to confer, the remedy would be to deny the motion with leave to refile. Like in *Taylor v. W. Or. Elec. Coop.*, however, "[e]ven if

### i.  Duplicative Hours

Under certain circumstances, duplicative hours may be deducted from a fee award. While "[a] party is certainly free to hire and pay as may lawyers as it wishes, [it] cannot expect to shift the cost of any redundancies to its opponent." *Nat'l Warranty Ins. Co. v. Greenfield*, No. CV-97-1654-ST, 2001 WL 34045734, at *5 (D. Or. Feb. 8, 2001). For example, "[w]hen attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys. The same good 'billing judgment' requires attorneys not to bill for more than two attorneys to review pleadings or to attend oral argument." *Id.* In determining whether hours were duplicative, courts should consider the complexity of the case or the extent to which the attorneys handled distinct aspects of the task billed. *See United States v. Montagne Development, Inc.*, 3:11-cv-01191-PK, 2014 WL 2334209, at *5 (D. Or. Mar. 10, 2014) (reducing duplicative hours for "multiple attorneys billing for the same mediation, the same conference with opposing counsel, or the same intra-office conference").

Defendant first argues that all time spent "reviewing" emails from co-counsel is necessarily duplicative and should be stricken. The Court does not agree. The Court recognizes the need to confer with co-counsel to ensure efficiency and avoid duplicative work. The Court also acknowledges counsels' representations that significant time spent reviewing emails has already been omitted. The Court therefore allows Plaintiff to recover these fees as reasonably necessary to the coordination of the four attorneys involved in this case.

---

the parties conferred earlier, they clearly would not have resolved the issues. This court will not require the futile act of striking this motion." No. CV-03-01311-ST, 2005 WL 2709540, at *3 (D. Or. Oct. 21, 2005). The Court will not therefore deny or reduce fees on this basis.

Defendant also argues that Mr. Sand spent duplicative and unnecessary time preparing for (and attending) the depositions and cross-examinations of experts Dean Binder and Brian Kelley. Defendant points out that Mr. Sand did not take the depositions or conduct the cross examinations—Mr. Sola did. Again, the Court does not agree that this work was impermissibly duplicative. The record does not suggest that Mr. Sola conducted his own parallel preparation; rather, Mr. Sola appears to have relied on Mr. Sand's preparation and knowledge. *See* Sand Decl. at ¶¶ 7, 8, 14, 15, 19, ECF 169. Given the complicated nature of expert testimony, the Court finds no issue with this division of labor. The Court will therefore allow Plaintiff to recover fees for the time Mr. Sand spent preparing for, and participating in, the depositions and cross-examinations of Defendant's experts Binder and Kelley.

### ii.  Clerical Tasks

"It is well settled, both in this District and elsewhere, that it is inappropriate to seek fees under a fee shifting statute for purely secretarial or clerical work." *Lafferty v. Providence Health Plans*, No. 08-CV-6318-TC, 2011 WL 127489, at *5 (D. Or. Jan. 14, 2011) (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal [or lawyer] rate regardless of who performs them . . . .")).

"Tasks considered clerical include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents." *Sterling Sav. Bank v. Sequoia Crossing, LLC*, No. 03:09–cv–00555–AC, 2010 WL 3210855 at *7 (D. Or. Aug. 11, 2010); *see also Frevach Land Co. v. Multnomah County Dept. of Envtl. Servs.*, No. CV-99-1295-HU, 2001 WL 34039133, at *12 (D. Or. Dec. 18, 2001) (tasks such as proofreading,

indexing, or assembling documents are not compensable because they are overhead and thus already "reflected in the hourly billing rate.").

Defendant challenges a number of billing entries as impermissibly clerical. In particular, Defendant argues that "Mr. Sola seeks to recover approximately 6.7 hours of time reviewing court generated notices of electronic filings." Def. Resp. 19, ECF 162. Defendant also argues that at all four attorneys billed for purely administrative tasks, including scheduling phone calls and hearings.

First, the Court does not find that Mr. Sola's review of each court generated notice of electronic filing ("NEF") is per se clerical. To the contrary, reviewing a notice from the court or opposing party is, in general, reasonably necessary to litigation. Nevertheless, the Court agrees that, at a minimum, Mr. Sola billed for an unreasonable amount of time on this task. It appears that Mr. Sola billed 0.1 hours for each notice he reviewed. This includes notices of motions for extensions of time and orders granting those extensions of time. *See, e.g.*, Sola Decl. Ex. 1 at 2, ECF 142-1. When these notices were accompanied by substantive legal documents—such as a motion for summary judgment—Mr. Sola appears to have billed for the review of these documents separately. *See id.* (billing 0.1 hours to review NEF of notice of case assignment, discovery, and pretrial scheduling order and separately billing 0.2 hours to review complaint, summons, discovery, and pretrial order). The Court therefore finds the 6.7 hours reviewing NEFs unreasonable, and reduces this time by half.[5]

The Court also finds that some attorneys appear to have billed for purely administrative tasks, such as scheduling phone calls and hearings. For example, between September 25, 2018 and October 5, 2018, Mr. Sola billed 0.8 hours related to scheduling depositions and phone

---

[5] Rounding down, the Court therefore reduces Mr. Sola's time by 3.3 hours.

conferences. *Id.* at 8. Similarly, between January 31, 2018 and February 7, 2018, Mr. Jones

billed 0.5 hours related to scheduling a Rule 16 conference and a meeting with Plaintiff. Jones

Decl. Ex. 1 at 2, ECF 144-1. He also billed 3.1 hours for time spent redacting trial exhibits. *Id.* at

23.[6] Thus, after reviewing the time entries for each attorney, the Court strikes these clerical

hours. Mr. Sola's award is reduced by 12.7 hours (for a total of 16 hours), and Mr. Jones' time is

reduced by 6 hours.

### b. Reduction of the Lodestar

Considering the hours reasonably expended and a reasonable hourly rate for each of

Plaintiff's attorneys, this Court's calculation of the lodestar is as follows:

Mr. Sola: 681.7 hours x $540/hour= $368,118

Mr. Sand: 293.1 hours x $330/hour = $96,723

Mr. Fuller: 24.3 hours x $330/hour = $8,019

Mr. Jones: 177.5 hours x 330/hour = $58,575

**Total** = $531,435

Defendant argues for a further reduction of the lodestar. Specifically, Defendant argues

that Plaintiff's success at trial was limited; not only was the jury's award less favorable than

Defendant's pretrial offers of judgment, but Plaintiff obtained only $101,000 in actual damages

and *no* punitive damages. Defendant also argues that Plaintiff refused to engage in settlement

discussions generally.

The lodestar method—a reasonable hourly rate multiplied by the reasonable number of

hours required by the case—creates a presumptively reasonable fee. *Perdue v. Kenny A. ex rel.*

---

[6] On the first day of trial, the Court directed Plaintiff's attorneys to redact Mr. Sponer's social
security number from the previously unredacted trial exhibits.

*Winn*, 559 U.S. 542, 552 (2010). However, a district court may adjust the lodestar when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* at 554. However, such adjustments are appropriate only in "rare circumstances," because the "lodestar figure [already] includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." *Id.* at 553. For example, a court may not adjust the lodestar based on factors already included in the lodestar calculation itself, because doing so effectively double-counts those factors. *Id.* Instead, the lodestar can be adjusted only by factors relevant to the determination of reasonable attorney's fees that were not already considered in the initial lodestar calculation. *Id.*

The Court first finds Defendant's argument as to Plaintiff's willingness—or rather, unwillingness—to engage in settlement negotiations unpersuasive. Defendant cites no support for its position that this engagement is a factor that may be properly considered in the lodestar analysis.[7] Moreover, while Defendant argues that Plaintiff unreasonably refused to engage in settlement negotiations, Plaintiff argues that Defendant's attempts at settlement were simply unacceptable (as they did not, for example, include an admission of liability) and stymied by Defendant's own litigation tactics. The Court sees no reason to resolve this conflict and notes that Defendant *was* able to engage in settlement negotiations, of a sort, through its many offers of judgment. Thus, the Court will not reduce the lodestar based on Defendant's position that Plaintiff unreasonably refused to engage in settlement negotiations in the first place.

---

[7] As discussed below, the *amount* offered in settlement may clearly be considered in the lodestar analysis. *See A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 461 (9th Cir. 2013) ("the district court has the discretion (1) to consider the amounts discussed in settlement negotiations, or not; and (2) to give those amounts as much or as little weight as it sees fit." ).

Nevertheless, the Court finds Defendant's arguments as to the offer of judgment and the success obtained at trial well taken. While a Rule 68 offer does not bar an award of attorney fees, a court must consider the results obtained by the plaintiff in determining the reasonableness of any fee award. *Haworth v. State of Nev.*, 56 F.3d 1048, 1052 (9th Cir. 1995). Specifically, the Ninth Circuit has explained that

> the district court must take into consideration the amount of the Rule 68 offer, the stage of the litigation at which the offer was made, what services were rendered thereafter, the amount obtained by judgment, and whether it was reasonable to continue litigating the case after the Rule 68 offer was made.

*Id.* at 1052–53. The degree of success obtained by a plaintiff is "the most critical factor" in determining an appropriate fee award. *Hensley*, 461 U.S. at 436.

Defendant made several offers of judgment throughout the course of the litigation. On May 30, 2019, Defendant offered $100,000.01 plus reasonable attorneys' fees and costs. On July 22, 2019, Defendant offered $165,000.01 plus reasonable attorneys' fees and costs. On August 12, 2019, Defendant offered $200,000.01 plus reasonable attorneys' fees and costs. Thus, Plaintiff's recovery of $101,000 represents only $1,000 more than the May offer and only 50% of the final offer. While the Court does not believe these offers should cut off attorneys' fees completely, the Court does find they weigh in favor of reducing the lodestar.

The Court also finds Plaintiff's failure to receive *any* punitive damages significant. As in *Valentine v. Equifax Services*, 543 F.Supp.2d 1232 (D. Or. 2008), the case at trial was largely about punitive damages. Indeed, "Plaintiff's trial presentation, and therefore necessarily [his] trial preparation, placed significant emphasis on [his] claim for punitive damages and the need for the jury to send a message to defendant." *Valentine*, 543 F.Supp.2d at 1236. While "requiring direct proportionality for attorney's fees would discourage vigorous enforcement of the consumer protection statutes," *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1033 (9th

Cir. 2012), here, the amount Plaintiff received in damages was a miniscule percentage of what he sought, *see Atwood v. PCC Structurals, Inc.*, No. 3:14-cv-00021-HZ, 2016 WL 2944757 (D. Or. Apr. 1, 2016) ("[T]he amount [Plaintiff] received as damages for those claims was a miniscule percentage of what she sought. Her limited damages award reflects the jury's conclusion that Plaintiff was harmed in a much more limited way than she claimed. . . A significant reduction is appropriate because it accounts for Plaintiff's failure to prove three of her five claims and her limited success in proving the two remaining claims."); *see also Kirkpatrick v. Equifax Information Services, LLC*, No. Civ. 02–1197MO, Civ. 03–199–MO, 2005 WL 1231485 (D. Or. May 23, 2005) ("[B]ecause plaintiff was unsuccessful in receiving punitive damages some reduction is appropriate."). Thus, some reduction based on Plaintiff's limited success in obtaining damages is appropriate.

While some reduction is appropriate, the Court acknowledges that Plaintiff's claims survived a motion for summary judgment, and Plaintiff prevailed on each claim at trial. While the jury did not award punitive damages, it did find that Defendant willfully and negligently violated the FCRA. It also awarded actual damages in the amount of $101,000. The Court therefore finds that the appropriate fee reduction is 25%, reflecting a midpoint between the lack of punitive damages and the rejected offers of judgment—of which Plaintiff recovered only 50% at trial—and the jury finding in Plaintiff's favor on each claim before them.

The Court therefore reduces the lodestar amount, previously calculated at $531,435, by 25%. Plaintiff is awarded $398,576.25 in attorneys' fees.

23 – OPINION & ORDER

## CONCLUSION

Plaintiff's motions for attorneys' fees [141] and costs [137] are granted in part and denied in part. Plaintiff's motion for expenses [139] is denied. Defendant's motion for costs [148] is granted in part.


IT IS SO ORDERED.

Dated: _____ April 28, 2020 _____.


_____

MARCO A. HERNÁNDEZ
United States District Judge